KENNEY v. SOUTH SHORE NATURAL GAS & FUEL CO.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1909.)

1. EVIDENCE (§ 122*)—"RES GESTÆ"—STATEMENTS BEFORE EVENT.
    In an action against a gas company for injuries from an explosion of gas which escaped from an uncapped pipe, a declaration by an employé of the company, sent to plaintiff's house to install a gas meter and make a test of the piping in the house, made to plumbers at the house, that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

he would make the test, though the pipes had been tested, was admissible as a part of the res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 346; Dec. Dig. § 122.*

For other definitions, see Words and Phrases, vol. 7, pp. 6130–6136; vol. 8, p. 7787.]

2. EVIDENCE (§ 123*)—RES GESTÆ—STATEMENTS AFTER EVENT.

But a statement made after the explosion as to his test was not a part of the res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 365; Dec. Dig. § 123.*]

3. WITNESSES (§ 379*)—IMPEACHMENT—CONTRADICTORY STATEMENTS.

Where an employé, testifying as a witness for his employer, denied the making of statements contradicting his testimony, evidence that he had made the contradictory statements was admissible to affect his credibility.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1209; Dec. Dig. § 379.*]

4. TRIAL (§ 261*)—INSTRUCTIONS—REQUESTS.

Where a requested charge was in part correct and in part erroneous, the court could refuse the charge as an entirety.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 660; Dec. Dig. § 261.*]

5. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL OF REQUESTS.

Where the court stated, at the time evidence was received, the purpose for which it was admitted, and subsequently gave a correct charge as to the purpose, the refusal to give a charge on the subject was not erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 653; Dec. Dig. § 260.*]

6. DAMAGES (§ 132*)—PERSONAL INJURIES—EXCESSIVE DAMAGES.

Where a person was frightfully injured and permanently injured and disfigured by the explosion of natural gas, which had escaped from an uncapped pipe in an upper room in her house, a verdict for $16,338.82 was not excessive, especially where defendant was content to rely on plaintiff's evidence as to her injuries.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 372; Dec. Dig. § 132.*]

7. GAS (§ 20*)—INJURIES FROM ESCAPING GAS—NEGLIGENCE.

In an action against a gas company for injuries received by an explosion of gas which had escaped from an uncapped pipe in a house, evidence held to justify a finding that an employé of the gas company had actually removed the cap to make a test, and had then negligently failed to replace it, authorizing a recovery.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 17; Dec. Dig. § 20.*]

Williams, J., dissenting.

Appeal from Trial Term, Chautauqua County.

Action by Johanna Kenney against the South Shore Natural Gas & Fuel Company. From a judgment for plaintiff for $16,338.82, and from an order denying a motion for a new trial made on the minutes, defendant appeals. Affirmed.

See 126 App. Div. 236, 110 N. Y. Supp. 503.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Arthur C. Wade (George Clinton, on the brief), for appellant.

Thos. P. Heffernan (Thomas H. Larkins, on the brief), for respondent.

ROBSON, J.  Plaintiff seeks to recover for injuries received because of an explosion of natural gas, which had escaped from an uncapped pipe in an upper room in her house.  The litigated question is: Who was responsible for that condition of the pipe?  If it was removed by defendant's employé when testing the pipe, and he negligently failed to replace it, then, of course, there can be no question of defendant's liability.

The house had been piped and the piping tested in May preceding the accident; but the piping was not connected with defendant's main in any way till October 10th following.  Defendant sent its employé, Hallock, to install the gas meter and connect up with the service pipe and the house piping that afternoon.  The only use that was to be then made of the gas was in the cook stove, and not for lighting purposes.  Blanding, an employé of the plumbers who originally installed the piping in the house, went there at about the same time to put the burners in the stove and prepare it for operation.  He had no occasion to interfere with the cap, or the pipe, which it closed.  This pipe was in another part of the house, some distance removed from the room in which the cook stove was, and was intended for use only in supplying gas for lighting purposes.  The evidence fairly warranted the jury in finding that the cap was securely on the offending pipe in the morning of that day.  The plaintiff, her brother, and the two employés above referred to, were the only persons in the house during that day, as they may also have found.  Every one of these persons swears that he or she did not remove or interfere with the cap.  But Hallock, the defendant's employé, was the only one who had any reason to remove it, and he only if he made a pressure test of the piping of the house; i. e., a test with an air pump and a gauge.

The evidence is clear that such a test was invariably made by defendant when installing a meter, unless such a test had been theretofore made by it.  Hallock had such a pump and gauge with him at the house.  Defendant's officer, who sent him to install the meter, did not know that the pipes had been previously tested.  Neither did Hallock, when he left defendant's office on this service.  Before arriving at the house, however, he was told by Sippel, one of the plumbers who piped the house, and by Blanding, the plumbers' employé, to whom I have referred, that the pipes had been already tested by defendant.  This Hallock himself swears to on direct examination as a witness for defendant.  On cross-examination, he denies saying to Sippel and Blanding, when he was told that the piping had been already tested by defendant, that "that didn't make any difference; he was going to make a test anyway."  He also denies stating to the witness Donovan, after the fire, that he had made a test of the pipes.  The evidence of the witnesses Sippel and Blanding that he did make such statement is material, not alone for purposes of contradicting Hallock's evidence, but is proper evidence in chief for plaintiff.  If he made the statement, it was made by defendant's employé and agent in the course of, connected

with, and within the scope of his employment, and so was clearly a part of the res gestæ, and could be properly considered, not only as affecting Hallock's credibility, but as direct affirmative evidence tending, to show that he actually did make a pressure test. Of course, this statement does not apply to the evidence of Donovan as to what Hallock told him after the explosion in regard to making the test. This was "contradiction" or "credibility" evidence, pure and simple, and competent only for that purpose.

This brings us to a consideration of an exception to the charge of the trial court, following a refusal to charge as requested by defendant. The court was asked to charge that:

"If the jury should find that Hallock stated to Sippel and to Donovan either that he intended to test the piping in the house, or that he had tested the piping in the house, that is no evidence from which the jury could find that he did make such test, or that he removed the cap."

The court then said:

"Well, you may consider that in connection with the other evidence as bearing upon the question. It is only competent for that purpose, and that alone."

Defendant excepted to the refusal to charge as requested, and to the court's "statement to the effect that it is competent for that purpose."

This request to charge joined Hallock's statement to Sippel before the explosion, a part of the res gestæ and competent affirmative evidence, as has been pointed out, with his statement to Donovan after the accident had occurred. If either statement was competent as direct evidence, no error was made in refusing to charge as requested. The court was not required to divide the request, and differentiate between the evidence of Sippel and that of Donovan, and state—what would have been, perhaps, the correct rule—that Sippel's evidence was competent for the purpose specified in the request, but Donovan's was not. The court was warranted in treating the request to charge as an entirety, and, that being so, the refusal to charge was proper, and his statement as to the bearing and competency of the evidence, in that view, was correct. Defendant's counsel discusses this exception as though the request and exception applied to Donovan's evidence only. If that were the fact, the exception would be worthy of consideration. The court, however, had in the body of the charge instructed the jury properly in relation to the probative effect of such subsequent statements, and was not required to repeat the instruction. The purpose for which Donovan's evidence was admitted was also clearly stated by the court at the time it was admitted.

The other exceptions urged upon our attention have been examined; but we do not find that they present reversible error.

I do not think we can say the verdict is excessive. It is large, it is true; but the plaintiff was frightfully and permanently injured and disfigured. Defendant was content to rely on plaintiff's evidence as to her injuries. We must assume that the jury found it true, and that defendant conceded as much.

In conclusion, it is clear, and practically conceded, that the cap must have been removed that day by some one. It did not come off without direct human aid. No one had any occasion to remove it, except Hallock. He would necessarily, or at least naturally, do so, if he made the pressure test, as his instructions from defendant required him to do unless a previous test had been made; and, as the jury may have found, he insisted to at least two persons, after he had learned that the test had been previously made, that he was going to make the test anyway. The jury were fairly warranted in finding that he did actually remove the cap, make the test, and then negligently fail to replace it.

Judgment and order affirmed, with costs. All concur, except WILLIAMS, J., who dissents.